UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:23-CV-00302-CRS-RSE

**KIMBERLY M.**                                                                                            **PLAINTIFF**

VS.

**MARTIN O'MALLEY,**[1]
*Commissioner of Social Security*                                                                          **DEFENDANT**

### REPORT AND RECOMMENDATION

The Commissioner of Social Security denied Kimberly M.'s[2] ("Claimant's") application for disability insurance benefits. Claimant seeks judicial review of the Commissioner's denial pursuant to 42 U.S.C. § 405(g). (DN 1). Claimant has filed a Motion for Summary Judgment and a Fact and Law Summary. (DN 12; DN 13). The Commissioner has responded in a Fact and Law Summary. (DN 16). Claimant has filed a reply brief. (DN 17). The District Judge referred this case to the undersigned United States Magistrate Judge for consideration and preparation of a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (DN 10).

### I. Background

Claimant applied for disability insurance benefits on August 25, 2020. (Transcript, hereinafter "Tr.," 171-175). In her application, Claimant alleged disability beginning on February 1, 2020, due to anxiety, fibromyalgia, HME/MHE, depression, back issues, and endometriosis. (Tr. 197). Claimant's application was denied on initial review and again on reconsideration. (Tr. 72, 80). Administrative Law Judge Dwight D. Wilkerson ("ALJ Wilkerson") conducted a hearing

---

[1] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Pursuant to Federal Rule of Civil Procedure 25(d), Martin O'Malley is substituted for Kilolo Kijakazi as Defendant in this case.
[2] Pursuant to the Western District of Kentucky's General Order No. 22-05, any non-government party in a 42 U.S.C. § 405(g) case will be identified and referenced solely by first name and last initial in opinions issued.

in Louisville, Kentucky on December 16, 2021. (Tr. 33-57). Claimant attended the hearing by telephone with her non-attorney representative.[3] (Tr. 33). An impartial vocational expert also attended the hearing. (*Id.*).

During the hearing, Claimant testified to the following. Claimant last worked as a photo technician but had to stop because her job was outsourced. (Tr. 38-39). She reported that she suffers from several physical issues. Claimant testified that she has endometriosis which renders her bedridden monthly and dehydrated for three to four days. (Tr. 41). Multiple Hereditary Exostosis ("MHE") has formed tumors on her pelvis and knees which make it difficult for her to sit and walk. (Tr. 47). She claims that her fibromyalgia is making her MHE worse and causing her bones and muscles to hurt. (Tr. 41-42). Claimant reports that her pain level from her muscular problems and fibromyalgia is a three or four out of ten. (Tr. 43). She testified that she struggles with sleeping and has not slept through a full night in about seven years. (Tr. 45). On her bad days, she tries not to move or drive and cannot walk without a cane. (Tr. 43). She needs a cane for ambulation and balance, and it is difficult for her to walk across the parking lots at Walmart and Kroger. (Tr. 48). Claimant reported that she cannot wash dishes, hang clothes, and struggles to hold her phone up. (Tr. 45-46). Because her husband works third shift, he helps her throughout the day. (Tr. 45). Claimant also testified that she has been experiencing random paralysis where her body shuts down and she cannot speak. (Tr. 48). She reported that this happened twice in 2020 and four times in 2021. (*Id.*). She believes that the paralysis is triggered when she overexerts herself or experiences vertigo. (Tr. 49). While her neurologist thinks it is caused by spots in her brain, her psychiatrist believes it is caused by pseudodementia. (Tr. 48).

---

[3] Claimant agreed to appear at the administrative hearing by phone because of the COVID-19 pandemic. (Tr. 165).

In addition, Claimant testified that she suffered from depression and anxiety when she worked around people. (Tr. 49). She reported that she has problems communicating with others. (Tr. 44). Claimant also stated that her psychologist recently diagnosed her with pseudodementia which causes her to be forgetful. (Tr. 43). She makes lists and has seven alarms set on her phone to remind her to take her medication, pick up her children, and calm herself down. (Tr. 44). Claimant stated that that she saw a therapist in 2009 or 2010 but has been going to the University of Louisville for psychiatric help. (Tr. 49-50). Her psychiatrists plan to change the medication for her mental issues because the medication she currently takes has not been successful and she is feeling more panicky. (Tr. 50). On good days, she tries to sew unless her back hurts from sitting for too long or she becomes confused due to her pseudodementia. (Tr. 46).

ALJ Wilkerson issued an unfavorable decision on January 12, 2022. He applied the traditional five-step sequential analysis promulgated by the Commissioner, 20 C.F.R. § 404.1520, *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 855 (6th Cir. 2010), and found as follows. First, Claimant has not engaged in substantial gainful activity since February 1, 2020, the alleged onset date. (Tr. 17). Second, Claimant has the following severe impairment: degenerative disc disease. (*Id.*). Third, Claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App'x 1. (Tr. 21). Between the third and fourth steps, ALJ Wilkerson found that Claimant has the residual functional capacity ("RFC") to perform "light work" with the following limitations: "no climbing of ladders, ropes, or scaffolds; occasionally climb ramps and stairs; occasionally stoop, kneel, crouch, and crawl; no work at unprotected heights or around dangerous, moving machinery." (Tr. 22). Fourth, Claimant is capable of performing past relevant work as a photo technician, photographer, and mail handler. (Tr. 25). Based on this evaluation, ALJ Wilkerson concluded that

Claimant has not been under a disability, as defined in the Social Security Act, from February 1, 2020, through the date of his decision. (Tr. 27).

Claimant appealed ALJ Wilkerson's decision. (Tr. 167-70). The Appeals Council declined review, finding Claimant's reasons for disagreement did not provide a basis for changing the decision. (Tr. 1). At that point, ALJ Wilkerson's denial became the final decision of the Commissioner, and Claimant appealed to this Court. (DN 1).

## II. Standard of Review

Administrative Law Judges make determinations as to social security disability by undertaking the five-step sequential evaluation process mandated by the regulations. *Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 803-04 (6th Cir. 2008) (citing *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990)); 20 C.F.R. §§ 404.1520(b), 416.920(b). Throughout this process, the claimant bears the overall burden of establishing they are disabled; however, the Commissioner bears the burden of establishing the claimant can perform other work existing in significant numbers in the national economy. *Id.* at 804 (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004)).

When reviewing the ALJ's decision to deny disability benefits, the Court may "not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). Instead, the Court's review of the ALJ's decision is limited to an inquiry as to whether the ALJ's findings were supported by substantial evidence, 42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001) (citations omitted), and whether the ALJ employed the proper legal standards in reaching his conclusion. *See Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence exists "when a reasonable mind could accept the evidence as

adequate to support the challenged conclusion, even if that evidence could support a decision the other way." *Cotton v. Sullivan*, 2 F.3d 692, 695 (6th Cir. 1993). The Supreme Court has clarified "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high[.]" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted).

### III. Conclusions of Law

Claimant challenges ALJ Wilkerson's step two finding that she had no medically determinable mental impairments. (DN 11-1, at PageID # 865). Step two of the sequential evaluation process requires the claimant to establish the existence of a severe, medically determinable impairment that meets the twelve-month durational requirement. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). A medically determinable impairment is an impairment that "result[s] from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1521. Medically determinable impairments "must be established by objective medical evidence from an acceptable medical source." *Id.* The claimant's statement of symptoms, a diagnosis, or a medical opinion will not establish the existence of a medically determinable impairment. *Id.* An ALJ is not required to consider impairments that are not medically determinable when assessing a claimant's RFC.[4] *See Durbin v. Comm'r of Soc. Sec.*, No. 2:17-cv-896, 2020 U.S. Dist. LEXIS 92160, at *43 (S.D. Ohio May 27, 2020); *Robinson v. Comm'r of Soc. Sec.*, No. 17-cv-12202, 2018 U.S. Dist. LEXIS 90001, at *33 (E.D. Mich. May 8, 2018) ("There

---

[4] A claimant's RFC is defined as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(c). Put otherwise, the RFC is the most a claimant can do despite her physical and mental limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). An ALJ bases his RFC determination on "all of the relevant medical and other evidence" in the case record. Id. (a)(3). This requires the ALJ to evaluate the persuasiveness of the medical opinions in the record and assess the claimant's subjective allegations. 20 C.F.R. §§ 404.1520c, 404.1529(a).

exists no analogous requirement for the ALJ to account for non-medically determinable impairments past step two[.]")

At step two, ALJ Wilkerson found that Claimant's degenerative disc disease was a severe impairment. (Tr. 17). However, ALJ Wilkerson acknowledged that, "[a]t the hearing, the claimant testified to a number of symptoms related to conditions that appear to be either not severe or not medically determinable." (Tr. 18). In evaluating Claimant's alleged mental impairments, ALJ Wilkerson stated that "[w]hile the record contains diagnoses of . . . depression and anxiety, these are not objectively established by the record and therefore not medically determinable." (Tr. 19). ALJ Wilkerson added that "[a]lthough the claimant has reported she possibly has . . . pseudo dementia, the record does not demonstrate [this is] medically determinable." (*Id.*).

Claimant argues ALJ Wilkerson erred in finding that she had no medically determinable mental impairments. (DN 11-1, at PageID # 865). Claimant asserts that ALJ Wilkerson ignored all of the medical opinions and findings of record that demonstrate Claimant has, at the very least, non-severe mental impairments. (*Id.* at PageID # 866). Claimant highlights multiple diagnoses of depression, anxiety, and bipolar disorder from her physicians. (*Id.* at PageID # 867-68). Claimant emphasizes that she received medication management for anxiety and depression; had decreased concentration, dysphoric mood, and sleep disturbance; and was diagnosed with major depressive disorder and generalized anxiety disorder. (*Id.* at PageID # 869 (citing tr. 503, 520-22, 528, 531, 533-36, 761, 785, 792-94, 830-81)). Claimant believes that ALJ Wilkerson relied on his own "lay interpretation" of the evidence in finding that her mental impairments were not medically determinable. (*Id.* at PageID # 865). Because ALJ Wilkerson's error at step two led to his related failure to assess any corresponding RFC limitations, Claimant explains, his error is not harmless. (*Id.* at PageID # 870).

The Commissioner argues that Claimant has failed to meet her burden of not only showing that she had medically determinable mental impairments, but also showing that the evidence demanded additional limitations in the RFC to accommodate her impairments. (DN 16, at PageID # 888). Regarding ALJ Wilkerson's step two analysis, the Commissioner explains that ALJ Wilkerson considered the evidence in assessing Claimant's alleged mental impairments and determined that her depression and anxiety were not objectively established by the record and, thus, not medically determinable. (*Id.* at PageID # 884). The mere diagnosis of a condition in a medical record, the Commissioner clarifies, does not establish a medically determinable impairment. (*Id.* at PageID # 891). The Commissioner contends that, because an ALJ is allowed to weigh evidence without relying on a medical opinion in assessing the impact of a claimant's impairments, ALJ Wilkerson did not substitute his lay opinion for those of Claimant's physicians. (*Id.*). The Commissioner asserts that Claimant is asking the Court to reweigh the evidence in this case, which is impermissible. (*Id.* at PageID # 892). Because substantial evidence supports ALJ Wilkerson's decision and because his decision is consistent with applicable legal authority, the Commissioner maintains no reversible error occurred. (*Id.* at PageID # 896).

Claimant relies heavily on diagnoses of depression, anxiety, and bipolar disorder from both treating and non-treating sources in support of her argument. However, because ALJ Wilkerson sufficiently explained his reasoning in finding the diagnoses unpersuasive, ALJ Wilkerson did not err in concluding that these conditions were not medically determinable.

Claimant briefly cites to treatment notes from Dr. George W. Scott, II, M.D., a neurologist who examined Claimant in August 2021. (DN 11-1, at PageID # 867; tr. 784-829). After ruling out a neurological disorder, Dr. Scott diagnosed Claimant with anxiety and depression with a referral to psychiatry and behavioral health counseling. (Tr. 799). ALJ Wilkerson discussed

7

Claimant's visit with Dr. Scott in his decision, citing to Dr. Scott's treatment notes in support of ALJ Wilkerson's conclusion that "the objective record does not demonstrate signs of [depression and anxiety] despite the diagnoses in the record." (Tr. 20). Indeed, at the August 2021 visit, Claimant's mental status examination resulted in normal findings. (Tr. 796-97). Claimant was oriented and alert and had normal concentration, fund of knowledge, and behavior. (*Id.*). Despite her reports of "significant anxiety and depression[,]" Dr. Scott observed that Claimant was not nervous/anxious and reported her as "[n]egative for agitation, behavioral problems, confusion, decreased concentration, dysphoric mood, hallucinations, self-injury, sleep disturbance and suicidal ideas." (Tr. 796).

Based on Dr. Scott's referral, psychiatrist Dr. Laura Cordonnier, M.D., examined Claimant in November 2021. (Tr. 830-37). Dr. Cordonnier diagnosed Claimant with recurrent, moderate major depressive disorder and unspecified anxiety disorder. (Tr. 835). ALJ Wilkerson noted that, although Dr. Cordonnier observed Claimant with dysthymic mood, her remaining findings were normal. (Tr. 20). For example, Claimant had appropriate, congruent, and full range of affect; appropriate appearance and behavior; linear, organized thought processes with normal associations and thought content; fair attention, concentration, insight, and judgment; and was calm, cooperative, and pleasant. (Tr. 834). And despite Claimant's assertion during the hearing that her "psychologist recently diagnosed [her] with pseudo dementia[,]" (Tr. 43), Dr. Cordonnier opined in her treatment notes that Claimant "could have a component of pseudo-dementia due to uncontrolled depression/anxiety resulting in reported memory/concentration issues." (Tr. 835). Contrary to Claimant's belief, this comment does not constitute a diagnosis of pseudodementia nor was pseudodementia listed as a diagnosis in Dr. Cordonnier's treatment notes. (*Id.*). Moreover, in

8

concluding that pseudodementia was not a medically determinable impairment, ALJ Wilkerson highlighted the uncertainty of Dr. Cordonnier's own statement. (Tr. 20).

Consultative examiner Dr. Neetu Jose, M.D., diagnosed Claimant with depression. (Tr. 496). However, Dr. Jose found that "the results of the exam [are] incongruent with the subjective complaints/limitations of the patient." (*Id.*). Specifically, regarding Claimant's mental status, Dr. Jose highlighted her appropriate affect and her ability to hear and respond appropriately to questions asked during her evaluation. (*Id.*). ALJ Wilkerson discussed Dr. Jose's comment about the inconsistencies between Claimant's complaints and examination results. (Tr. 24).

Consultative examiner Brittany Shaw, M.S., diagnosed Claimant with unspecified bipolar disorder and unspecified anxiety disorder. (Tr. 489). Ms. Shaw opined that Claimant experienced "moderate" limitations in her ability to "tolerate stress [sic] and pressure of day-to-day employment" because of her impairments. (*Id.*). She further opined that Claimant experienced "slight" limitations in her capacity to "respond in appropriately [sic] to supervision, co-workers, and work pressures in a work setting." (Tr. 490). ALJ Wilkerson found Ms. Shaw's opinion "not persuasive." (Tr. 24). As an initial matter, ALJ Wilkerson determined that Ms. Shaw's "one-time exam is not sufficient to support the consultative examiner's diagnosis of bipolar disorder" and "the diagnosis is also not established by the objective record." (Tr. 21). Indeed, Ms. Shaw was the only medical source to diagnose Claimant with bipolar disorder, and the disorder is not mentioned in any of Claimant's other treatment records. As with Dr. Cordonnier's opinion, ALJ Wilkerson highlighted the largely normal findings from Ms. Shaw's examination. (*Id.*). Besides her hypomanic mood, Ms. Shaw reported Claimant as having appropriate affect; good attention and concentration; intact memory; normal hygiene and appropriate clothing; and intact abstract reasoning, insight, and judgment. (*Id.*). Ms. Shaw also observed that Claimant was oriented and

9

her attitude was cooperative. (*Id.*). Because Claimant's examination results were unremarkable but for mood, ALJ Wilkerson concluded that Ms. Shaw's finding of a moderate restriction in Claimant's ability to tolerate the stress and pressure of daily employment was not well-supported. (Tr. 24). ALJ Wilkerson further explained that Ms. Shaw's opinion was inconsistent with other evidence of record, including her "lack of formal mental [sic] treatment" and "the normal mental status exams across multiple providers." (Tr. 24-25).

At both the initial and reconsideration levels of Claimant's disability application, the State Agency consultants found that Claimant was not disabled and issued "Disability Determination Explanations" in which they discussed their rationale. (Tr. 58-73, 75-80). At the initial level, the State Agency psychological consultant found the following severe mental impairments: (1) depressive, bipolar and related disorders and (2) anxiety and obsessive-compulsive disorders. (Tr. 65). The consultant opined that Claimant experienced "moderate" limitations in her ability to "concentrate, persist, or maintain pace" and "adapt or manage oneself." (*Id.*). The consultant further opined that Claimant experienced "mild" limitations in her ability to "understand, remember, or apply information" and "interact with others." (*Id.*). In the "Additional Explanation" section, the consultant appeared to rely heavily on Ms. Shaw's medical opinion in making these findings. (*See* Tr. 66 ("Psych CE Medical Opinion is persuasive as it is well supported and is consistent with the totality of the evidence in file.")).

At the reconsideration level, the psychological consultant listed the following mental impairments as severe: (1) depressive, bipolar and related disorders and (2) anxiety and obsessive-compulsive disorders. (Tr. 76). However, she opined that Claimant experienced only "mild" limitations in the "Part B" criteria of the listings. (Tr. 77). Later in her assessment, the consultant additionally commented that "[p]er overall evidence, the claimant's mental impairments . . . are

10

considered non-severe." (*Id.*). Thus, it is clear that the consultant intended to categorize Claimant's mental impairments as non-severe. In deviating from the findings of the consultant at the initial level, the consultant at the reconsideration level concluded that "[t]he initial assessment is not fully supported, persuasive or affirmed due to: additional evidence." (*Id.*). The consultant considered Ms. Shaw's report but found that her opinion on Claimant's ability to tolerate work stress was "not fully supported or consistent with the evidence and less persuasive." (*Id.*). Specifically, the consultant discussed how, besides Ms. Shaw indicating Claimant's "'hypomanic' mood with little description of same aside from 'slightly rapid' speech[,]" Claimant's mental status examination was otherwise intact. (*Id.*). The consultant also noted how Claimant's medical records prior to Ms. Shaw's report and through May 2021 "consistently indicate normal mood, affect and behavior with intact mental status." (*Id.*). She further highlighted that Claimant's most recent treatment notes indicate a denial of mental health symptoms. (*Id.*).

ALJ Wilkerson found both of the State Agency psychological consultants' assessments "not persuasive." (Tr. 25). He determined that the findings within their assessments "relie[d] heavily on subjective complaints." (*Id.*). ALJ Wilkerson reiterated Claimant's largely normal findings on examination, highlighting how, "[o]ther than the consultative examiner noting dysthymic mood, the longitudinal record documents normal/appropriate mood, affect, concentration, attention, memory, judgment, insight, thought process/content, and fund of knowledge." (*Id.*). He further discussed how the consultants' findings were inconsistent with Claimant's "lack of formal mental health treatment[.]" (*Id.*).

It is well-settled in the Sixth Circuit that "the mere diagnosis of an impairment does not render an individual disabled nor . . . reveal anything about the limitations, if any, it imposes upon an individual." *McKenzie v. Comm'r of Soc. Sec.*, No. 99-3400, 2000 U.S. App. LEXIS 11791, at

11

\*16 (6th Cir. May 19, 2000); *see also Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) ("The mere diagnosis of [a condition], of course, says nothing about the severity of the condition."). The Court finds *Farahani v. Commissioner of Social Security* analogous to this case. No. 2:21-cv-11125, 2022 U.S. Dist. LEXIS 130825 (E.D. Mich. June 15, 2022). There, the ALJ determined that the plaintiff's depression was not medically determinable because the only evidence which indicated any mental impairments consisted of diagnoses and self-reported symptoms. *Id.* at \*43. Notably, the ALJ found that the consultative examiner's diagnosis of "adjustment disorder with anxiety and depression" was inconsistent with the plaintiff's unremarkable mental status examination and the lack of any signs of mental health or severe affect disturbance. *Id.* at \*45. The ALJ further highlighted that "Plaintiff consistently exhibited normal mental status examinations and never received formal mental health treatment." *Id.* (internal quotations omitted). Based on these findings, the court concluded that the record contained no objective evidence from which the ALJ could have found that the plaintiff's depression was a medically determinable impairment. *Id.* at \* 43. *See also Bryan v. Comm'r of Soc. Sec.*, No. 2:18-cv-554, 2019 U.S. Dist. LEXIS 112306, at \*7-8 (S.D. Ohio July 8, 2019) (finding alleged mental impairments not medically determinable due, in part, to inconsistencies between plaintiff's diagnoses and results of mental status examinations).

Similarly, as ALJ Wilkerson discussed at length, the objective record here does not support a finding that Claimant's mental conditions are medically determinable. Despite Claimant's contention that "every single acceptable medical source agreed that [she] had, at the very least, a non-severe mental impairment[,]" (DN 11-1, at PageID #866), diagnoses do not inherently establish medically determinable impairments. Claimant's diagnoses were inconsistent with the reports of her examining sources who observed largely normal findings on Claimant's mental

12

status examinations. These diagnoses appear to stem more from Claimant's self-reported symptoms than "medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1521. The records in this case are insufficient to establish that Claimant was suffering from any functional limitations resulting from her alleged mental conditions. Although Ms. Shaw and the State Agency consultants opined that Claimant's alleged mental impairments limited her ability to work, ALJ Wilkerson adequately explained why these limitations were unsupported by objective evidence in the record. Moreover, the State Agency consultants' assessments offer no support for Claimant's argument that her alleged depression and anxiety are medically determinable impairments. The psychologists did not personally examine Claimant nor offer any independent diagnoses. *See Bryan*, 2019 U.S. Dist. LEXIS 112306, at *7-8 (determining that State Agency psychologists' assessments and opined limitations did not support plaintiff's argument that her alleged mental conditions were medically determinable).

Moreover, contrary to Claimant's assertion, ALJ Wilkerson did not rely on his own "lay interpretation" of the evidence in finding that her mental impairments were not medically determinable. (DN 11-1, at PageID # 865). ALJ Wilkerson was not required to base his assessment of Claimant's medically determinable impairments on a medical opinion. Rather, the regulations are clear that ALJs "will not use . . . a medical opinion to establish the existence of an impairment(s)." 20 C.F.R. § 404.1521. After evaluating the objective medical evidence in the record, ALJ Wilkerson correctly determined that Claimant did not have any medically determinable mental impairments. ALJ Wilkerson considered the medical opinions and treatment records and provided reasonable explanations for discounting them. As such, ALJ Wilkerson did not substitute his lay opinion for those of Claimant's acceptable medical sources.

Aside from her diagnoses, Claimant also points to evidence in the record that she claims proves that she has medically determinable mental impairments. (DN 11-1, at PageID # 869). Specifically, she asserts that Claimant "received medication management during the relevant period for her anxiety and depression [and] that she had decreased concentration, dysphoric mood, and sleep disturbance[.]" (*Id.* (citing Tr. 503, 520-22, 528, 531, 533-36, 761, 785, 792-94, 830-81)). While ALJ Wilkerson acknowledged that Claimant had been prescribed medications for depression and anxiety, he determined that "the objective record does not demonstrate signs of these disorders[.]" (Tr. 20). ALJ Wilkerson noted that Claimant reported symptoms to her providers including "depressed mood, fatigue, impaired concentration, and lying in bed not wanting to get up." (*Id.*). But, as with ALJ Wilkerson's discussion of the medical opinions, he emphasized that "exams both prior to and throughout the period under consideration are unremarkable." (*Id.*). ALJ Wilkerson noted that the examinations describe Claimant as alert, oriented, and cooperative with normal speech and thought processes. (*Id.* (citing tr. 310, 506, 508, 515, 520-21, 524, 527, 529, 531-32, 536, 538, exs. 12F-14F)). He also discussed how her providers observed her as having normal behavior, mood and affect, concentration, judgment, comprehension, and fund of knowledge. (*Id.*).

Claimant's argument is merely an attempt to point to contrary evidence in the record. But such an argument is insufficient, as an administrative decision is not subject to reversal even if substantial evidence would have supported the opposite conclusion. *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012). But even consideration of the treatment notes cited by Claimant does not persuade the Court that remand is justified. Much of the evidence consists of physicians' notes on Claimant's self-reported symptoms or mere references to a past or present diagnosis of depression or anxiety. Rather than uncontradicted evidence of Claimant's mental impairments, the

14

pages reveal inconsistent results from the physicians' review of Claimant's systems, (*compare* tr. 508, *with* tr. 520-21), as well as reports that Claimant's depression and anxiety feel controlled with her medication. (*See* tr. 520, 531, 533). In fact, her physician reported in one treatment note that "[t]he patient declines to go to counseling." (Tr. 535). A review of the mental status findings on record—as opposed to Claimant's diagnoses, medical opinions, and self-reported symptoms—reveals that ALJ Wilkerson did not err in concluding that her mental conditions are not medically determinable.

What is particularly "egregious" to Claimant about ALJ Wilkerson's decision is that "his RFC included ZERO mental limitations." (DN 11-1, at PageID # 869) (emphasis in original). However, as previously noted, "[i]f an alleged impairment is not medically determinable, an ALJ need not consider that impairment in assessing the RFC." *Jones v. Comm'r of Soc. Sec.*, No. 3:15-cv-00428, 2017 U.S. Dist. LEXIS 19232, at *15 (S.D. Ohio Feb. 10, 2017). Because the Court finds that ALJ Wilkerson did not commit reversible error, he was not required to consider these impairments when fashioning the RFC. While Claimant relies on her mental health diagnoses, she has failed "to present[] evidence to show that the clinical findings and diagnoses [she] has listed imposed additional functional limitations that the ALJ failed to take into account in formulating the [] RFC." *Denham v. Comm'r of Soc. Sec.*, No. 1:14-cv-611, 2015 U.S. Dist. LEXIS 125315, at *39 (S.D. Ohio Sep. 18, 2015). As such, the Court finds that ALJ Wilkerson properly classified Claimant's alleged mental conditions as non-medically determinable impairments and did not err in his formulation of the RFC.

Further, any error at step two would be harmless because ALJ Wilkerson did, in fact, consider Claimant's mental conditions in assessing her RFC. *See Jones*, 2017 U.S. Dist. LEXIS 19232, at *17-18 (explaining that "any error at Step Two is harmless if the ALJ considers all

impairments in determining Plaintiff's RFC"); *Mardis v. Comm'r of Soc. Sec.*, No. 2:18-cv-337, 2019 U.S. Dist. LEXIS 29446, at *14 (S.D. Ohio Feb. 25, 2019) (holding that, because the ALJ considered plaintiff's allegations regarding her knee and back in assessing her RFC, any error in finding these conditions not medically determinable was harmless). As part of the explanation for his RFC finding, ALJ Wilkerson noted that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." (Tr. 22). ALJ Wilkerson acknowledged Claimant's reported mental health issues, (tr. 18), discussed Dr. Scott and Dr. Cordonnier's treatment notes, (tr. 20), and explicitly considered the opinions of Ms. Shaw, Dr. Jose, and the State Agency psychologists (tr. 24-25). Throughout his decision, ALJ Wilkerson repeatedly states that Claimant's subjective complaints, her diagnoses, and the medical opinions were not entirely consistent with the objective evidence in the record. (Tr. 19-21, 25). Because ALJ Wilkerson considered Claimant's alleged mental conditions in assessing her RFC, any error at step two was harmless.

As a closing note, an ALJ's decision may be supported by substantial evidence "even if that evidence could support a decision the other way." *Casey v. Sec'y of Health & Hum. Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993); *see also Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007) (citing *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005)) ("If the ALJ's decision is supported by substantial evidence, then reversal would not be warranted even if substantial evidence would support the opposite conclusion."). Although Claimant has pointed to evidence that could possibly support a finding that she has some medically determinable mental impairments, there is also substantial evidence to support ALJ Wilkerson's findings to the contrary.

IV. Recommendation

For the foregoing reasons, the Court **RECOMMENDS** the Commissioner's decision be **AFFIRMED**.

NOTICE

Therefore, under the provisions of 28 U.S.C. §§ 636(b)(1)(B) and (C) and Fed. R. Civ. P. 72(b), the Magistrate Judge files these findings and recommendations with the Court and a copy shall forthwith be electronically transmitted or mailed to all parties. Within fourteen (14) days after being served with a copy, any party may serve and file written objections to such findings and recommendations as provided by the Court. If a party has objections, such objections must be timely filed or further appeal is waived. *Thomas v. Arn*, 728 F.2d 813 (6th Cir.), *aff'd*, 474 U.S. 140 (1984).

Copies:    Counsel